[Decided January 30, 1888.]

## NORTHERN PACIFIC RAILROAD COMPANY *v.* W. WHALEN AND OTHERS.

1. NUISANCE—DISORDERLY HOUSE—DESCRIPTION—COMPLAINT—DEMURRER.—
A complaint by a railroad company alleging that there are a number of
saloons and gambling houses along the line of its road, and that said
houses are public and private nuisances, but failing to name any particular
house, or to designate wherein it is disorderly or a nuisance, is fatally
defective on demurrer, in that it contains no allegation that would locate
any particular house, or describe it as disorderly.

2. INTOXICATING LIQUOR—LIQUOR LICENSE BY COUNTY COMMISSIONERS—IN-
JUNCTION TO RESTRAIN ISSUANCE—DISCRETION.—The act of the board of
county commissioners in granting license for the sale of intoxicating
liquors, which is exclusively within their jurisdiction, is a *quasi* judicial
one; and, if erroneous, the remedy is by appeal or certiorari, and not by
injunction.

3. SAME—SALE OF LIQUORS TO EMPLOYES—INJUNCTION TO RESTRAIN.—An
injunction will not lie to restrain the sale of intoxicating liquor to plain-
tiff's employes, on the ground that some of such employes become in-
toxicated and are disqualified from rendering service to their employer.

Appeal from the District Court holding terms at Ellens-
burg.   Fourth District.

The railroad company brought a suit against W. Whalen
and forty-four other defendants, each of whom were alleged
keepers of liquor saloons and gambling houses at various
points along the line of plaintiff's railroad, then in process
of construction, and each of them doing business on his
own account, to enjoin them from selling liquor at retail,
thereby making drunk plaintiff's employes and incapaci-
tating them from doing plaintiff's work, and from running
the saloons and gambling houses mentioned in the com-
plaint.   The county commissioners of the county in which
the alleged saloons and gambling houses were situate were
also joined as defendants for the purpose of restraining
them from issuing licenses to the other defendants, author-
izing the sale of intoxicating liquors at retail.   The defend-
ant demurred to the complaint because the same did not
state facts sufficient to constitute a cause of action.   The
demurrer was sustained, and plaintiff elected to stand by
his pleading.   Judgment was rendered against plaintiff, dis-
missing the complaint, from which it appealed.   The com-
plaint appears in full in the opinion of the court.

*Messrs. McNaught, Ferry, McNaught & Mitchell,* for the
Appellants.

The allegations of the complaint bring the case within
the definition of nuisance, both at common law and under
our Code. (Code, sec. 1235; 4 Wait's Actions and Defenses,
726; Wood's Law of Nuisances, pp. 10, 50; *Meyer* v. *State*,
41 N. J. Law, 6.)   The injury sustained by the appellant by
reason of the nuisance is an actionable injury. (Wood on
Nuisances, secs. 647–654, 670, 682, 697, 733; 4 Wait's Ac-
tions and Defenses, 732.)   That inadequacy of the Code and
common law remedy will authorize an injunction in this
case; an abatement or indictment would not prevent con-
tinuously recurring nuisance. (1 Pomeroy's Eq. Jur., secs.
217, 221, 237, 243, 245.)   Law and equity in such cases
have concurrent jurisdiction. (Wood on Nuisances, sec.

793; 1 High on Injunctions, sec. 185.) That there is such community of interest between the parties defendant as to authorize uniting them in one action as parties defendant. (1 High on Injunctions, secs. 173, 174, 180, 181, and 183; 1 Pomeroy's Eq. Jur., secs. 25, 256, 257, 260, 269, and 274; *The Debris Cases*, 8 Sawy. 628.) This case is within the equity jurisdiction for the following reasons: Because the remedy by injunction is a preventive remedy; it prevents irreparable injury, interminable litigation, and a multiplicity of suits; because the only effectual remedy for abatement of nuisance, except where special provision is made by statute, is in a court of equity; because an injunction is always allowed where injury is not susceptible of adequate compensation in damages, or where the injury is a constantly recurring one. (Wood on Nuisances, sec. 777.) Because the grievance is a constantly recurring one. (Id. sec. 780.) Because the injury is irreparable. (Id. sec. 778.) Because the railroad company has a right to construct its road over the unsurveyed lands of the United States without obstruction from the saloons and gambling houses of others. (Id. sec. 779.) Because there has been a diminution of the company's rights by an unlawful act. (Id. sec. 914.) The right to an injunction need not be first established at law. (Id. sec. 907.) Injunction is now the usual and only adequate remedy to restrain a nuisance and to prevent its recurring in the future. (1 Pomeroy on Eq. Jur.. sec. 237.)

*Mr. H. J. Snively*, for the Appellee.

Chapter 50 of the Code prescribes the civil remedies for nuisance. These remedies are exclusive. In this territory there can be no injunction, except as provided for in section 606 of Code. Section 1236 of the Code defines a public nuisance as one which equally affects the rights of an entire community. Plaintiff's complaint shows clearly that under this definition this is not a public nuisance. Even if an injunction would lie, as at common law, the legal remedy in this territory is adequate. (Code, secs. 1248–1252.)

A justice of the peace has jurisdiction of criminal nuisance. (Code, sec. 1886.) The plaintiff under our laws cannot be entitled to an injunction except under section 606 of the Code, which only gives the remedy on the hearing of an action for damages. The remedy at law is adequate. Plaintiff's right to recover damages should be the criterion to determine his right to an injunction. The injury to plaintiff is too remote to enable it to recover damages. (Addison on Torts, secs. 10 and 11). To show the insufficiency of plaintiff's complaint, counsel also cited 1 High on Injunctions, secs. 740, 750, 760, 762, 763, 767, 769, 808, 816, 827; 2 id., sec. 1555.

Mr. Justice LANGFORD delivered the opinion of the court.

This case comes before us upon the single question of whether the complaint states a cause of action. The complaint is as follows:

"To the Hon. George Turner, judge of the above named court:

"For supplemental and second amended complaint, plaintiff avers:

"1. That it is a corporation duly created and incorporated under and by virtue of an act of congress dated July 2d, 1864, entitled 'An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound,' and the acts supplementary and amendatory thereof.

"2. That under and by virtue of said acts of congress plaintiff is authorized and empowered to construct and maintain and operate a railroad and telegraph line from Lake Superior to Puget Sound.

"3. That under and by virtue of said acts of congress the said plaintiff is now constructing its said railroad line through Kittitas county, and through and over what is known as the Cascade mountains, at a place called Stampede pass, and that at the place where it is constructing the said road over the mountains, and in Kittitas county, is a village called Tunnel City; that said Tunnel City is lo-

cated and adjoining the tunnel now being constructed, under and by virtue of said acts of congress, through said Cascade range of mountains.

"4. That said railroad company has now in its employ in constructing its road as aforesaid at Tunnel City, in Kittitas county, four thousand employes, and that in the construction of its road as aforesaid it is necessary that said plaintiff and the contractors of said plaintiff should use high explosives, such as dynamite, and machinery run by electricity, steam, and compressed air, and in the use of said explosives and running of said machinery, and in the construction of said road, it requires sober, skilled labor.

"5. That the said defendants, except the board of county commissioners, at said tunnel, and on the public roads near thereto, and along the line of the road now being constructed by said plaintiff, for several months past have been running retail drinking and lager beer saloons, and selling spiritous, malt, and fermented liquors to the said employes of said plaintiff, and that the said sales of said liquors to said employes has frequently and continuously caused drunkenness of said employes, and that the said drunkenness incapacitated the said employes so that they were not able to perform the labor assigned to them and the labor they were expected to do, and for which they were employed, and that the said drunkenness increased the risk and danger incident to the necessary use of the said explosives and machinery, and increased the danger to the employes employed in constructing the road as aforesaid, and to the officers and agents of said plaintiff, and has caused, and is causing, many of said employes to quit the employment thereof; that during the four months last past the said railroad company has employed and transported in and upon said work about eight thousand men, at an average expense of two dollars for each man; that about four thousand of said men so employed, for the reason aforesaid, and to the great and irreparable damage of said railroad company, after being transported in as aforesaid, quit and left the work of said plaintiff; that said plaintiff, had it not been

for the sale of said liquor aforesaid, and drunkenness caused thereby, would have been able to complete, and would have completed, its road from Ellensburg to Tacoma during the present year, but on account of the sales of said liquor aforesaid to said employes, the plaintiff was not, and is not, able to obtain and retain on said work sufficient employes to complete said road during said time; that plaintiff will be compelled to continue the construction of said road during the winter season; that a large portion of said work is of such a character that it cannot be performed during the winter season without extraordinary expense and delay, and that the extra expense, caused by the sale of said liquor as aforesaid, necessary to the completion of said road during the winter of 1886 and 1887 over that necessary to complete the road during the present summer and fall, all of which plaintiff could have done had it not been for said saloons and said sales of intoxicating liquors aforesaid, will exceed $100,000; and that said plaintiff has been damaged in said sum by said sale of liquors, and intoxication caused thereby; that the delay in the completion of said road for said time, and damages incident thereto, in addition to said $100,000, will cause the said plaintiff damage and loss of the use of said road exceeding in amount $100,000; that said saloons have been so conducted, and drunkenness and gambling permitted and carried on to such an extent, that they, the said saloons, have been for months, and are now, public nuisances, and also a private nuisance in so far as the said plaintiff is concerned; that the superintendents, officers, and families thereof are seriously discomforted, injured, and annoyed by said nuisance, and that the lives of the said officers, agents, and employes are endangered, and the property of said plaintiff has been diminished and injured in value in consequence of said sales of liquors and drunkenness caused thereby; and that the said plaintiff, by said saloons, and the sale of intoxicating liquor therein to said employes, and said drunkenness, and said gambling, has sustained great and irreparable injury, and, if said saloons are allowed to run along the line of said road in future,

will continue to sustain injuries in all the matters aforesaid, and that said sales of intoxicating liquors, and the said drunkenness caused thereby, will cause in the future all the damage and injury, discomfiture and annoyance, that it has caused in the past; that the said defendants are insolvent, and not able to respond in damages to the said plaintiff for the damage already incurred and the damage that will be incurred in the future if said saloons are permitted to run; that said saloons and the said beer halls have been and are now running and selling at retail said intoxicating liquors as aforesaid to the employes of the plaintiff and others, without a license and without any right or authority so to do; that said saloons, during the past, have, and will in the future, unless enjoined, continuously and constantly continue to sell said intoxicating liquors to said employes, and constantly and continuously permit said drunkenness, and maintain said gambling houses and said public and said private nuisances, to the great injury, danger, discomfiture, and annoyance of the said plaintiff, and the said plaintiff's employes, and the said property of plaintiff.

"6. That the plaintiff has an interest in one-half of the land along the line of said road for forty miles distance on either side thereof; that the lands upon which said saloons are located are unsurveyed lands; that plaintiff's interest in the land cannot be ascertained or determined until the United States Government surveys are extended thereover; that the lands upon which said saloons are and have been located are either the lands of the said plaintiff or public lands of the United States, and that it cannot now be ascertained whether the said lands are those of the plaintiff or those of the United States; that the said defendants, excepting the said board of county commissioners and said Blomquist and Nelson, have been running and maintaining said saloons and nuisances under a paper writing purporting to be a license issued by the county auditor of Kittitas county; that the said paper writing was issued without right or authority therefor; that the board of Kittitas county and the members thereof, as above named, intend, unless

enjoined by this court, to grant to the said defendants (except said commissioners), and the said defendants intend to apply therefor, a retail license to sell liquors at the places, in the manner, and to the persons aforesaid, and intend thereunder to maintain said constantly recurring and continuing nuisance, and that the said defendants intend and are now fraudulently applying for said licenses without filing, or any one else for them filing, with the county auditor of Kittitas county, or the board of county commissioners of said county, the consent, in writing, of the owners of the buildings or premises upon which said saloons are run, and upon which they propose to allow the same to be run; and the said board of county commissioners were at the time of said application and are now well informed that the law requires such consent, in writing, to be filed and remain on file with the said board of county commissioners; and the said board of county commissioners are well and fully informed that the lands upon which said saloons are running, and upon which said defendants intend to run the same, is land over which the United States public surveys have never been extended; and that said board of county commissioners, with full knowledge that said defendants intend to fraudulently apply for said license, without the filing of said consent, in writing, and with the full knowledge that such consent, in writing, has not been filed, unless enjoined by this court, intend to grant said license; that the granting of said licenses still greatly complicates said matters and injures and damages said plaintiff, and will deprive plaintiff, to a great extent, if not absolutely, of any remedy against said defendants, and cause the plaintiff great and irreparable damage; that said defendants (excepting said board of county commissioners), nor any one else for them, have filed, or intend to, or can file, the consent, in writing, of the owner of the land upon which said saloons are located, with the county auditor or the board of county commissioners; and that said board of county commissioners have no right or authority to issue a license to any one to sell liquors at retail upon the public land of the United States; that the said Government of the

United States cannot be made responsible in damages for injuries caused by the sale of liquors thereon; and that the said Government of the United States cannot consent to the issuing of the said licenses; and that plaintiff has not and will not consent to the issuing of said licenses or the running of said saloons on said unsurveyed land; that the said sales of intoxicating liquors, and the said drunkenness and demoralization caused thereby, reduces the laboring capacity of the employes of said plaintiff to the extent on an average of one-quarter of said capacity daily, and that the damage and loss to plaintiff thereby daily, in addition to the items above named, is at least one thousand dollars per day; that unless said temporary and perpetual injunction is granted, the defendants (excepting said county commissioners) will continue to sell intoxicating liquors and cause said drunkenness, and will continue to maintain and permit said public nuisance as aforesaid; and that the said sales, said drunkenness, and said nuisance will cause said employes to quit said employment in the future as in the past, and still cause the said plaintiff great injury in all the particulars and matters in the future that it has in the past.

"7. That the said plaintiff has not an adequate remedy at law, and that the granting of said injunction will avoid a great multiplicity of suits.

"Wherefore, plaintiff prays for a temporary injunction enjoining the board of county commissioners from granting licenses to said defendants to retail spirituous, malt, and fermented liquors in Kittitas county, and enjoining said defendants from selling liquors at retail and running said saloons and gambling houses where drunkenness is permitted and carried on, during the pendency of this suit; and that the defendants, the board of county commissioners, be perpetually enjoined from granting licenses to retail spirituous, malt, or fermented liquors on unsurveyed public land; and that said defendants be perpetually enjoined from selling intoxicating liquors at retail, and from running and continuing to operate gambling houses and nuisances described in the complaint, and for such other and further relief as the court in the premises is competent to give."

We will consider first what are the rights of the plaintiff, which he claims are invaded and threatened.

It is claimed to be a right to import men to be employed by them, and in case they have them, that they shall remain sober. Though the claim is to some uncertain aggregate of men, it is clear that the right cannot consist to the joint labor of the uncertain aggregate as an entirety; but whatever it is, it is several as to each particular employe.

When the right exists, it is to each employe, and the complaint is that some of them, not naming which, get drunk, and these several employes getting drunk is the wrong complained of.

Now, if one man employs another to work for him, he has a right to require that man to keep safely sober. If he does not, he may be discharged, and may be sued for damages.

This is all the remedy which the law gives for this wrong.

These several rights as to each man employed, according to their very nature, cannot be joint or common as to all men employed.

But the complaint is not against these several wrong-doers, either severally or jointly; it is against the fifteen or twenty different men, who sell in different quantities, to each man, at his request, whisky. This is less a cause of action than there would be against the employe who made himself drunk.

Selling the whisky does not necessarily make any man drunk.

If the man who buys it performs his duty, it will not make him drunk; indeed, if he uses it properly it may do him good—at least will not make him drunk.

If one sells dynamite, powder, guns, or poison to another, it does not follow that the vendor is guilty of the result of the improper use of it by the vendee. Suppose it was a gun, powder, and balls that was sold to one employe, who with it shoots another employe—which is a similar case—would the vendor be guilty of murder? If he were thus guilty of selling pistols to employes, and was continuing the business, could the employer have the vendor enjoined?

Indeed, it would be admitted that the employer would have no cause of action against the vendor in law or in equity.

Having no remedy against the vendor at law, it would not follow that he would have one in equity, for he would have no remedy at all except to discharge his bad employes and sue them for damages.

This action is not against any proprietor of a house, but against twenty different proprietors of different houses.

It is unnecessary to decide whether an action could be maintained against any one house or not, for this complaint does not describe any one house which is a nuisance. Indeed, it does not declare that any one house is a disorderly house, and that plaintiff is annoyed because the house is disorderly. It merely claims that each of twenty men sells liquor to employes.

A tippling house is not a nuisance at common law or by statute; but a tippling house, or any other house, which is kept in such a disorderly manner as to seriously annoy neighbors, might be a nuisance. A man might keep an orderly house, yet be selling therein large quantities of spirits. The men might get drunk outside the house and there be noisy, or, if drunk inside, yet not noisy, the house would be no nuisance.

We conclude that the plaintiff's right to the services of its employes rests in executory contract with each employe, and the only remedy that the plaintiff has for this is for a breach of this contract against its contractor.

That, if the employe, upon account of a tort to his person, cannot perform his services, such employe has his action against the person who committed the tort, but the employer hath not an action. That the sale of liquor to an employe is not a tort against him nor his employer. That this action is brought, not for keeping a disorderly house, but merely for selling spirits to employes.

We therefore conclude that the demurrer was rightly sustained.

Were not the above true, and were this action brought by the proprietor of one house to abate the disorderly house of

another, there is no allegation which would locate the house or describe wherein it was a disorderly house, as to any one of the numerous proprietors sued. This defect would be fatal as to each of the several proprietors.

The cases cited, which show that when many different persons, each by his separate act, pollutes a stream so that the pollution has joined and become common, and this common pollution injures the land and premises of another, that this person thus injured may bring a suit to abate this common nuisance against the several persons who created it, have no application to this case.

First, because there are no premises in this case which contribute to a common nuisance; in fact, no premises or stationary thing or business which contributes to anything, and much less to a common thing, which is a nuisance to plaintiff's premises. There is nothing like a common stream, which each defendant contributes to corrupt. No one saloon does anything in common with another.

If any is a nuisance, it is a separate nuisance of itself, unconnected with the nuisance of the other.

Were they all joined in an indictment, as the houses have separate proprietors, and what constitutes nuisance in one has nothing to do with the other, none could be convicted.

If this action can be maintained, then any ship coming in or leaving a port could maintain a bill against all the saloons, all the gambling houses, and houses of ill-fame in a city in which the ship landed. Every manufactory could maintain a joint action in like manner against all such houses in the city in which they were situated. Every railroad company could maintain a joint action against all such houses in towns where the trains stopped. This case is indeed a novel one, and the principles upon which it is sought to be maintained are as novel.

It is alleged that the county commissioners are threatening to issue licenses, when the pre-requisites therefor have not been performed. The county commissioners in this matter are acting, and are to act, in a *quasi* judicial capacity on a matter exclusively within their jurisdiction.

If the act of the board is erroneous, the remedy is by appeal or certiorari.

It would be as reasonable to enjoin a justice of the peace because he threatened to enter judgment without a sufficient complaint, as to enjoin the commissioners in this instance. Whether or not the consent of the proprietor of the premises is obtained, is a question for the board to decide in the capacity which the statute has given.

We find no error committed by the District Court, and hence let its judgment be affirmed.

JONES, C. J., and ALLYN, J., concurred.